**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CHARISSA H,[1] | : | Case No.  3:25-cv-00026 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Charissa H. brings this case challenging the Social Security Administration's

denial of her application for a period of disability and Disability Insurance Benefits (DIB).  The

case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's

Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record

(Doc. #6).

I.      **Background**

The Social Security Administration provides DIB to individuals who are under a

"disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470

(1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically

determinable physical or mental impairment" that precludes an applicant from performing

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

"substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits in December 2021, alleging disability due to several impairments, including depression, anxiety, panic attacks, and problems sleeping.  (Doc. #6-6, *PageID* #292).  After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Nicholas J. Schwalbach on October 2, 2023.  (Doc. #6-3, *PageID* #s 52-78). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  He reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful activity since November 25, 2019, the alleged onset date.

The ALJ cannot find that Plaintiff was eligible for disability benefits earlier than April 15, 2020. She previously filed for benefits on January 6, 2020. Both applications were denied on April 14, 2020. The determinations denying the prior applications for benefits have become final and binding.

Step 2:    She has the severe impairment of depression, anxiety and/or social anxiety disorder, attention-deficit/hyperactivity disorder.

Step 3:    She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels, but is limited to a moderate noise environment, such as a business office. [Plaintiff] is able to understand, remember, and carry out simple instructions, perform routine tasks, and use judgment to make simple, work-related decisions. [Plaintiff] can

perform goal-oriented work, such as that of an office cleaner, but is unable to perform at a production-rate pace, as would be required for assembly line work, or jobs with strict production quotas. No more than occasional and superficial interaction, as defined, with supervisors and co-workers; no contact with the general public as part of job duties. No teamwork or tandem tasks. No more than occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustment to new expectations. No exposure to bright lights such as direct sunlight; [Plaintiff] may be exposed to lighting typically found in an office. No commercial driving."

Plaintiff is unable to perform her past relevant work as a cosmetologist.

Step 5:    Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #6-2, *PageID* #s 35-46).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability from April 15, 2020, through the date of his decision of October 25, 2023.  *Id.* at 46.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 33-46), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), and Plaintiff's Reply (Doc. #9). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial

3

evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)).  It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.    <u>Discussion</u>

Plaintiff asserts that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence from state agency psychologists, Karla Delcour, Ph.D., and Audrey Todd, Ph.D., and the consultative psychological examiner, Melissa Lanza, Ph.D.  Plaintiff contends that the ALJ excluded work preclusive break flexibility and supportive feedback limitations from the RFC determination.  (Doc. #7, *PageID* #s 1273-80).  Plaintiff also contends that the ALJ erred at Step Two of his analysis by failing to identify Plaintiff's migraines as a severe impairment. *Id.* at 1280-81. The Commissioner maintains that the ALJ properly found Plaintiff had a restrictive mental RFC and appropriately rejected two of the limitations in the prior administrative medical findings. Additionally, the Commissioner

avers that the ALJ properly considered Plaintiff's migraines and while he found them not severe at Step Two, he nonetheless included limitations to accommodate them in in the RFC. (Doc. #8, *PageID* #s 1287-95).

**Residual Functional Capacity**

First, Plaintiff contends that the ALJ's RFC is unsupported by substantial evidence because the ALJ substituted the psychologists' findings for his lay interpretation of the medical evidence.

An individual's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) (if the claimant's case is at the ALJ hearing level, the ALJ is responsible for assessing his RFC); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.").

The ALJ's RFC assessment must be based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). Further substantial evidence must support the ALJ's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.). However, the ALJ is not required to fully accept a physician's opined limitations in the RFC. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *see also Poe v. Comm'r of*

5

*Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").  However, while an ALJ is under no obligation to mirror a medical opinion verbatim, he does have an obligation to "meaningfully explain why certain limitations are not included in the RFC determination, especially when such limitations are set forth in opinions the ALJ weighs favorably." *Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.); *see also Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (Preston Deavers, M.J.) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission).

In formulating Plaintiff's mental RFC, ALJ Schwalbach considered the opinion of state agency psychologist Dr. Delcour, who reviewed Plaintiff's records on August 28, 2022. (Doc. #6-2, *PageID* #s 43-44) (citing Doc. #6-3, *PageID* #s 87-95). Dr. Delcour found that Plaintiff's abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself were moderately limited.  (Doc. #6-3, *PageID* #91).  Dr. Delcour opined that Plaintiff is capable of understanding and carrying out relatively simple tasks but should not be subject to strict production or pacing requirements, more than superficial social interactions, or an unpredictable work setting with more than infrequent routine changes. *Id.* at 93. Dr. Delcour noted Plaintiff "may need flexibility with breaks when experiencing an increase in symptoms," and that "[s]upervisors should provide supportive feedback." *Id.*

6

Additionally, the ALJ considered the opinion of state agency psychologist Dr. Todd in his formulation of Plaintiff's mental RFC. (Doc. #6-2, *PageID* #s 43-44) (citing Doc. #6-3, *PageID* #s 97-103). Dr. Todd reviewed Plaintiff's file upon reconsideration on October 17, 2022, and she affirmed Dr. Delcour's assessment. *Id.*

In the instant case, ALJ Schwalbach properly weighed the persuasiveness of the findings of Dr. Delcour and Dr. Todd in light of their consistency with other medical and non-medical source evidence and their supportability. *Id.* at 38-44. The ALJ found the prior administrative medical findings of Dr. Delcour and Dr. Todd to be "partially persuasive." *Id.* at 43. As to the limitations that Plaintiff could understand and carry out simple tasks without production requirements, was capable of superficial social interactions, and required workplace changes to be explained in advance, the ALJ found them "supported by explanation and citation and reasonably consistent with the medical record" and he "substantively adopted them" as Plaintiff's mental RFC. *Id.* The ALJ explained that because not all of these limitations were expressed in vocationally defined terms that he adapted the limitations in "vocationally defined terms" including a specific vocationally relevant for the term "superficial." *Id.*

The ALJ also considered the findings of consultative examiner Dr. Lanza, who examined Plaintiff in August 2022. (Doc. # 6-8, *PageID* #s 903-08). Plaintiff reported that her mental health symptoms started as a teen with an initial diagnosis and treatment received at age 20. Her primary care physician has been managing her symptoms for years and at the time of this evaluation, she was prescribed Wellbutrin. She also began receiving outpatient therapy 7-8 months prior, her first mental health counseling episode. *Id.* at 908. On mental status examination, Dr. Lanza found

7

Plaintiff to have mood and affect deficits but to otherwise be polite and cooperative with normal speech, logical and goal-oriented thought processes, average cognition and memory, and sufficient insight and judgment. *Id.* at 906. Dr. Lanza opined that, due to Plaintiff's ongoing mental health symptoms, she "appeared to have some" limitations in her ability to respond appropriately to supervisors, co-workers, the public, and to normal work pressures in a competitive work setting. *Id.* at 908.

Like the opinions of Dr. Delcour and Dr. Todd, ALJ Schwalbach properly considered the persuasiveness of Dr. Lanza's opinion under the factors of supportability and consistency. (Doc. #6-2, *PageID* #s 43-44). The ALJ determined that Dr. Lanza's opinion included vague statements of unspecified limitations in interacting with others and adapting and managing herself and a "somewhat implied conclusion" that she had a limitation in concentration, persistence, and pace. *Id.* at 43. The ALJ found that Dr. Lanza's opinion was nonetheless supported by her examination findings and found the opinion "generally" persuasive. *Id*. However, as to the recommended limitations of "supportive feedback" and a potential "need for flexibility with breaks when experiencing an increase in symptoms," the ALJ determined that:

> [t]hese recommendations have not been adopted, as they do not appear to be supported by the broader medical record. [Plaintiff]'s generally good response to conservative treatment and her mostly unremarkable mental status evaluation findings do not support a conclusion that [Plaintiff] regularly has increased symptoms, obviating the need for break flexibility. There also is no objective evidence indicating that [Plaintiff] requires supportive feedback and cannot tolerate standard feedback, even if it included criticism. [Plaintiff] got along with others when she worked in the past, continues to spend time with others, appeared polite and cooperative during consultative examination, and appeared with generally good objective mental status examination findings with improved mood with treatment, factors that do not support such a feedback limitation. As the residual functional capacity is the most an individual can do despite their impairments, the undersigned

does not adopt the limitations regarding break flexibility or positive feedback for the reasons explained.

(Doc. #6-2, *PageID* #44).

While it is true that an ALJ must refrain from "play[ing] doctor," *Boetticher v. Bisignano*, No. 3:25-CV-01220, 2026 WL 16450, at *7 (N.D. Ohio January 2, 2026) (Sheperd, M.J.) (internal citations omitted), an ALJ is not required to "rely solely upon medical opinions when formulating a residual functional capacity. . . ." *Jennifer C. v. Comm'r of Soc. Sec.*, No. 3:23-CV-72, 2023 WL 10511795, at *6 (S.D. Ohio Sept. 5, 2023) (Vascura, M.J.) (citing 20 C.F.R. § 1520c(c)(1)-(2)). To the contrary, an ALJ is expressly required to evaluate medical opinions based on their supportability and consistency. *Id.* Here, ALJ Schwalbach's decision is a far cry from a lay judicial official stepping into the shoes of a medical doctor.

As discussed above, ALJ Schwalbach's treatment of the opinions of Dr. Delcour, Dr. Todd, and Dr. Lanza includes ample discussion regarding the supportability and consistency of the findings. (Doc. #6-2, *PageID* #s 38-44). Further, "physician opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Jennifer C.*, 2023 WL 10511795, at *6 (citing *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (internal quotations omitted). More simply, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Id.* (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010)); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020). ALJ Schwalbach properly "showed his work" when explaining his reasons for finding Dr. Lanza's opinion "generally persuasive," Dr. Delcour and Dr. Todd's opinions

9

"partially persuasive," and the recommended limitations regarding "supportive feedback and a potential need for flexibility with breaks when experiencing an increase in symptoms . . . not . . . supported by the broader medical record." (Doc. #6-2, *PageID* #s 43-44). Of note, the ALJ cited Plaintiff's "markedly improved" depression symptoms, which by May 2022, Plaintiff was documented to have a lighter and improved mood with improved anxiety. *Id.* at 40 (citing Doc. #6-7, *PageID* #s 658-767). Further, the ALJ noted Plaintiff's reported significant improvement in relation to managing her anxiety and thoughts as well as her coherent speech, fair insight, and good judgment (*id.*, citing Doc. #6-7, *PageID* #s 777-87) as well as Plaintiff's reports of doing well overall and demonstrating fairly good mood, a full range of affect, fair concentration, and adequate memory (*id.*, citing Doc. #6-8, *PageID* #s 805-12). In addition, records indicated Plaintiff demonstrated normal findings on mental status exams and reported that medication was helping her depression (*id.*, citing Doc. #6-9, *PageID* #s 1027-41, 1172-75); and Plaintiff's treatment provider's repeated documentation that Plaintiff's depression was either stable or controlled (*id.*, citing Doc. #s 6-7, 6-8, 6-9; *PageID* #s 608, 621, 637, 916, 1192). On the other hand, the ALJ also noted that Plaintiff's depression symptoms persisted into 2022. *Id.* (citing Doc. #6-7, *PageID* #658-767). The ALJ acknowledged that Plaintiff demonstrated mood and affect deficits in July 2022. *Id.* (citing Doc. #6-7, *PageID* #777-78). Further, Plaintiff reported a lack of motivation and energy in August 2022 (*id.*, citing Doc. #6-8, *PageID* #805-12), and deficits in her mood, affect, thought content, and psychomotor abilities (*id.*, citing Doc. #6-9, *PageID* #s 1027-41, 1172-75). With all of the above in mind, and expressly reiterating Plaintiff's deficits in mood, affect, sporadic psychomotor abilities, and thought content, the ALJ found that Plaintiff had "conservative

treatment, good response to such treatment, and general normal mental status examination findings . . . ." *Id.* at 42.

Therefore, for all of the above reasons, ALJ Schwalbach's mental RFC findings are supported by substantial evidence.

**Step-Two Determination: Migraine Headaches**

Next, Plaintiff alleges that the ALJ reversibly erred in his consideration of her migraine headaches. (Doc. #7, *PageID* #1280). In furtherance of her argument, Plaintiff contends that, while "the ALJ acknowledged that [Plaintiff]'s medical records document treatment for migraine headaches, . . . he failed to even identify migraine headaches as a severe impairment." *Id.* (citing Doc. #6-2, *PageID* #36). Additionally, Plaintiff contends that the ALJ "did not attribute limitations to [Plaintiff]'s migraine headache symptoms in his [RFC] finding." *Id.* (citing Doc. #6-2, *PageID* #38).

An ALJ must make several determinations at Step Two. First, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520, 404.1521. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Additionally, it must meet the durational requirement. 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Rieder v. Comm'r*

*of Soc. Sec.*, No. 2:20-CV-5858, 2021 WL 5881784, at *4 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted*, No. 2:20-CV-5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021) (quoting *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021)). "Plaintiff has the burden of proving the existence of a medically determinable impairment." *Id.* (quoting *Moore*, 2021 WL 5149714, at *7).

If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The finding of at least one severe impairment at Step Two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at [S]tep [T]wo '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

Plaintiff contends that the ALJ erred in failing to find that her migraine headaches are a severe impairment; Plaintiff asserts that, by acknowledging she must avoid migraine triggers to

sustain work, the ALJ "implicitly acknowledges that her migraine symptoms would disrupt work when they occurred." (Doc. #7, *PageID* #1280). Plaintiff's argument is not well taken.

In this case, at Step Two, ALJ Schwalbach determined that Plaintiff's migraine headaches were not a severe impairment. (Doc. #6-2, *PageID* #36). The ALJ first noted that migraine headaches were a medically determinable impairment. *Id.* The ALJ cited to the assessment of Gary Onady, M.D., that Plaintiff has, or had, chronic nonintractable migraines on several occasions between January 2021 and May 2022. *Id.* The ALJ also noted that Dr. Onady reported that Plaintiff's migraines were "under control with current medication" in April 2022, and at the hearing, Plaintiff testified that, although she has weekly migraines, they are largely controllable with medications. *Id.* Additionally, the ALJ recognized that Plaintiff required an increase in medication for her condition in August 2022 but noted that her migraines were "back to baseline and stable" that same month. *Id.* With this in mind, the ALJ stated he "could not find evidence in the record indicating that . . . migraines cause more than a minimal limitation in the claimant's ability to work." *Id.* Substantial evidence supports the ALJ's conclusion.

Nonetheless, even if the ALJ erred at Step Two by finding Plaintiff's migraines to be a non-severe impairment, "when an ALJ finds both severe and non-severe impairments at Step Two and continues to evaluate non-severe impairments at Step Four, any error at Step Two is harmless." *Byers v. Dudek*, No. 5:24-CV-1354, 2025 WL 555581, at *23 (N.D. Ohio Feb. 20, 2025) (Armstrong, M.J.) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that, where an ALJ finds some impairments are severe, and both severe and non-severe impairments are considered in

13

remaining steps of sequential analysis, the fact that other impairments were not severe is "legally irrelevant")).

Here, in his determination of Plaintiff's RFC, the ALJ explains:

[a]lthough her migraine headaches appear under good control with medication, the undersigned finds she is limited to a moderate noise environment, such as a business office, should have no exposure to bright lights such as direct sunlight; but the claimant may be exposed to lighting typically found in an office, and should engage in no commercial driving as precautions for her migraine headache condition.

(Doc. #6-2, *PageID* #39).

Thus, the ALJ acknowledged Plaintiff's migraine headaches, finding they are a non-severe impairment at Step Two while noting a lack of evidence that these migraines caused more than minimal limitations in Plaintiff's ability to work. (Doc. #6-2, *PageID* #36). Subsequently, the ALJ expressly considered Plaintiff's migraine headaches at Step Three and ultimately adopted an RFC that included limitations associated with her migraine headaches. *Id.* at 39. Therefore, ALJ Schwalbach properly considered Plaintiff's migraine headaches. Moreover, Plaintiff does not point to any limitations caused by her migraines that the ALJ failed to consider or include in his RFC assessment. (Doc. #7, *PageID* #1280-81); *see also Rieder*, 2021 WL 5881784, at *4, *report and recommendation adopted*, 2021 WL 6197808 (quoting *Moore*, 2021 WL 5149714, at *7).

For these reasons, Plaintiff's Statement of Errors is not well-taken.

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. #7) is **OVERRULED;**

2.  The Commissioner's non-disability determination is **AFFIRMED**; and

3.  The case is terminated on the Court's docket.


March 26, 2026

*s/ Peter B. Silvain, Jr.*

Peter B. Silvain, Jr.
United States Magistrate Judge